UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEORGIA BROWN,

    Plaintiff,

v.                                           CASE NO. 3:15cv1801(DFM)

STATE OF CONNECTICUT, DEPT.
OF MENTAL HEALTH AND
ADDICTION SERVICES,

    Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Georgia Brown, brings this action against her employer, the State of Connecticut, Department of Mental Health and Addiction Services ("DMHAS" or "defendant"), alleging racial discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. She alleges that DMHAS discriminated against her on the basis of her race when it disciplined her by suspending her without pay for five days as a result of alleged patient abuse. Pending before the court is defendant's motion for summary judgment. (Doc. #29.) For the reasons set forth below, the motion is GRANTED.[1]

---

[1] This is not a recommended ruling; the parties consented to the jurisdiction of a magistrate judge. (Doc. #25.) See 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b).

I.   Factual Background

The following facts, drawn from the parties' Local Rule 56(a) statements, are undisputed.[2]

The plaintiff, who is African-American, was hired by DMHAS in October 2007 as a Mental Health Assistant 1 ("MHA-1"). She remained an MHA-1 at all times relevant to this case. DMHAS' Local Rule 56(a)(1) Statement of Facts, Doc. #29-2 ("DMHAS' SOF") ¶ 1, Plaintiff's Local Rule 56(a)(2) Statement of Facts, Doc. #30-1 ("Pl.'s SOF") ¶ A.1.)

On December 25, 2012, plaintiff and Anita Suker ("Suker"), another MHA-1 who is white, were assigned to provide direct care to RM, a patient in defendant's General Psychology Division. They were to bathe RM and put him to bed. That evening, RM complained to Suker that plaintiff had treated him roughly during his transfer into bed, causing him unnecessary pain. (DMHAS' SOF ¶¶ 2, 3; Pl's SOF ¶¶ A.2, A.3.) RM complained only about plaintiff; he did not allege that Suker had hurt him. Suker reported RM's abuse complaint to DMHAS supervision that evening, as she was obligated to do. (DMHAS' SOF ¶¶ 4, 5; Pl's SOF ¶¶ A.4, A.5.)

---

[2] Plaintiff admitted all of defendant's fifteen proffered facts. (Pl.'s SOF, at 1-2.)

DMHAS investigated RM's allegations of abusive conduct by plaintiff. Based on its investigation, DMHAS concluded that plaintiff had been physically abusive and unnecessarily rough with RM, and suspended plaintiff without pay for five days. (DMHAS' SOF ¶¶ 6, 7; Pl's SOF ¶¶ A.6, A.7.)

Through her union grievance process, plaintiff exercised her right to appeal her disciplinary suspension, and eventually submitted the matter for binding arbitration. (DMHAS' SOF ¶ 8; Pl's SOF, ¶ A.8.) The arbitrator found that plaintiff's testimony regarding the RM abuse allegation was inconsistent among plaintiff's own various versions, and that her testimony was not credible. (DMHAS' SOF ¶ 10, Pl's SOF ¶ A.10.) She concluded that plaintiff "was inappropriately rough in her handling of [RM] on December 25, 2012, and [DMHAS] had just cause to issue her discipline." (DMHAS' SOF ¶ 9; Pl's SOF, ¶ A.9.)

The arbitrator made the following findings of fact:

> On February 27, 2013, following an investigation, the Department of Mental Health and Addiction Services (DMHAS) issued a five-day disciplinary suspension to Georgia Brown, a Mental Health Assistant 1 at Connecticut Valley Hospital. The Department alleged that Ms. Brown had violated DMHAS General Work Rule #19, which states:
>
>> Physical violence, verbal abuse, inappropriate or indecent conduct and behavior that endangers the safety and welfare of persons or property is prohibited.

According to the disciplinary letter [dated February 27, 2013]:

> Credible evidence was obtained that substantiates that you were physically abusive and handled the patient in an unnecessarily rough manner when removing his pants, causing him pain. This was found to be abusive and employee misconduct.

The incident at issue occurred on the evening of December 25, 2012. Coworkers Georg[ia] Brown and Anita Suker were tasked with preparing patient [RM] for bed. [RM]'s primary language is Spanish, though he is said to understand and speak English to a limited extent. Ms. Brown does not speak Spanish, but studied it for three years and understands/speaks some words. There is no dispute that [RM] is able to make his immediate needs known to staff members. There are Spanish-speaking staff members available as the need arises to communicate more fully with [RM].

[RM] is a bilateral amputee, confined to a wheel chair. He has serious skin issues of which all staff are aware. His buttocks are particularly painful due to the breakdown of his skin in that area. Undressing [RM] and transferring him from his wheel chair to his bed is a two-person operation, involving a hydraulic ["Hoyer"] hoist. Because of [RM]'s skin condition, his pants are removed after he is hoisted in the air out of his chair so that the clothing does not chafe his skin. He has a catheter.

On the evening of December 25, [2012, RM] became upset and complained loudly of pain while he was being prepared for bed [by Brown and Suker]. There are conflicting versions by Ms. Brown and Ms. Suker of what transpired as [RM] was being undressed but it is undisputed that Brown and Suker had words with each other while in the process of undressing [RM] and that immediately after getting [RM] settled in his bed, Suker reported to a nurse that Brown had handled [RM] inappropriately. The complaint was immediately brought to the attention of Head Nurse Beverly Lanoie, who summoned a Spanish-speaking Assistant to hear what was vexing [RM]. [RM,] tearful and still upset, reported that Brown had been rough with him while undressing him, pulling his pants out from under his buttocks while he was still seated, causing him significant pain, and that Brown had been rude and cursed him in Spanish. The matter was then raised to Supervising Nurse Kim Michalsky.

4

> A thorough investigation was conducted, including interviews of all participants and potential witnesses. On the evening of the event, Ms. Brown was questioned by and gave a sworn statement to DMHAS Public Safety [Police] Officers. On January 23, 2013, she was interviewed by Kathy Winkeler, Principal HR Specialist in DMHAS Labor Relations and she provided a written statement.
> At the end of the investigation, DMHAS concluded that the descriptions of the event given independently by [RM] and Ms. Suker were credible and that Ms. Brown's version, which conflicted in key respects with [RM]'s and Suker's, could not be credited. DMHAS noted that Brown had been counseled previously for being rude and disrespectful, and that she had received a disciplinary warning in 2012 for not helping a patient in a wheelchair after a nurse had asked her for help. Accordingly, DMHAS imposed the five-day suspension that is at issue here.

(DMHAS' SOF ¶ 13; Pl's SOF, ¶ A.13.)

Defendant ordinarily suspends any MHA-1 for a substantiated instance of patient abuse. The arbitrator found that, "[t]here was no dispute in this matter that if it is found that [plaintiff] is guilty as charged [of patient abuse], the [five day suspension] penalty imposed was appropriate." (DMHAS' SOF ¶¶ 14, 15; Pl's SOF, ¶¶ A.14, A.15.)

Plaintiff knows of no other DMHAS employees who were proven to have abused a patient, not merely accused, but did not receive a disciplinary suspension. (DMHAS' SOF ¶ 11; Pl's SOF, ¶ A.11.) Plaintiff has no direct evidence that any DMHAS employee discriminated against her because of her race or color. (DMHAS' SOF ¶ 12; Pl's SOF, ¶ A.12.) This action followed.

5

II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is a fact that influences the case's outcome under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A "genuine" dispute is one that a reasonable jury could resolve in favor of the non-movant. Id. The moving party bears the initial burden of establishing that there are no genuine disputes as to any material fact. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Once such a showing is made, the non-movant must show that there is a genuine issue for trial. Id. The court may rely on admissible evidence only, Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010), and must view the evidence in the record in the light most favorable to the non-movant, drawing all reasonable inferences in that party's favor. Weinstock, 224 F.3d at 41.

> A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient . . . . Summary judgment cannot be defeated by the presentation . . . of but a scintilla of evidence supporting [a] claim . . . .

Reaes v. City of Bridgeport, No. 3:13CV1508(DFM), 2017 WL 553380, at *2 (D. Conn. Feb. 10, 2017) (citations and internal quotation marks omitted).

    III. Discussion

Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff asserts a claim of disparate treatment based upon her race. (Complaint, ¶ 13.)

Plaintiff's Title VII disparate treatment claim is analyzed under the familiar three-step, burden-shifting analysis described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). The plaintiff first must establish a prima facie case by showing that she is a member of a protected class; she was qualified for the position for which she applied; she suffered an adverse employment action; and the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. Id. at 802. See also Brown v. Waterbury Bd. of Educ., 247 F. Supp. 3d 196, 207 (D. Conn.

2017)(discussing elements of a Title VII disparate treatment claim).

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell, 411 U.S. at 804). If the employer does so, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was a pretext for discrimination. Burdine, 450 U.S. at 253. In showing pretext, the plaintiff need not show that the employer's proffered non-discriminatory reason is untrue, rather she must "establish . . ., by a preponderance of the evidence, that discrimination played a role in an adverse employment decision." Henry v. Wyeth Pharmaceuticals, Inc., 616 F.3d 134, 156-57 (2d Cir. 2010). The ultimate burden of persuasion "remains at all times with the plaintiff." Burdine, 450 U.S. at 253. See also Brown v. Waterbury Bd. of Educ., 247 F. Supp. 3d 196, 211-212 (D. Conn. 2017)(same).

Defendant contends that it is entitled to summary judgment because plaintiff cannot demonstrate that the discipline imposed gives rise to an inference of discrimination, and she cannot prove that employer's proffered reason for the discipline was a

pretext for discrimination. (Doc. #29-1 at 8.) Plaintiff argues that summary judgment should not enter because she has proffered evidence that "shows that the plaintiff was treated differently from similarly situated co-workers not in her protected class." (Doc. #30 at 3.)

1. Prima Facie Case

The evidence necessary to satisfy the plaintiff's initial burden is de minimis. Zimmermann v. Assoc. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). The parties do not dispute that plaintiff is a member of a protected class, was qualified for the MHA-1 position at which she worked, and suffered an adverse employment action (the five day disciplinary suspension). (Doc. #29-1 at 8.) The only remaining question is whether plaintiff has demonstrated circumstances giving rise to an inference of discrimination. A plaintiff can support this burden by

> (a) demonstrating that similarly situated employees of a different race or national origin were treated more favorably, (b) showing that there were remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, or (c) proving that there were other circumstances giving rise to an inference of discrimination on the basis of [the] plaintiff's race or national origin.

Nguyen v. Dep't of Corr. & Cmty. Servs., 169 F. Supp. 3d 375, 388 (S.D.N.Y. 2016) (citation and internal quotation marks

9

omitted). Here, plaintiff must offer evidence that gives rise to an inference that she was treated differently from other employees because of her race. Although plaintiff makes an argument regarding similarly situated employees, she fails to show sufficient evidence to support her argument.

"A plaintiff may raise an inference of discriminatory intent by showing that the employer . . . treated her less favorably than a similarly situated employee outside her protected group, i.e., a 'comparator.'". Joye v. PSCH, Inc., No. 14CV3809 (DLC), 2016 WL 6952252, at *6 (S.D.N.Y. Nov. 28, 2016); see also Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) ("[A] showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case."). A plaintiff relying on comparator evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)(citation omitted).

Plaintiff has named a purported comparator, Anita Suker, who is white. Plaintiff has not shown, however, that the DMHAS "treated [her] less favorably than a similarly situated employee

outside of [her] protected group." Graham v. Long Island R.R., 230 F.3d at 39; see, e.g., Russell v. Hughes, No. 3:07CV-527 (WWE), 2009 WL 1212754, at *3 (D. Conn. Apr. 30, 2009) (granting summary judgment where plaintiff "failed to produce any evidence regarding . . . comparators, including their names, their supervisors, their positions or their actions that may be analogous to plaintiff's."). Suker is not "similarly situated," because, unlike plaintiff, she was not accused of abusing a patient. (DMHAS' SOF, ¶¶ 10-13: Pl's SOF, ¶¶ A.10-A.13.)

Plaintiff also argues that "Kim Turnage, a Caucasian female, perpetrated physical abuse of a patient. She was transferred off the unit but was not given a suspension." (Pl's SOF ¶ B.7.) She furthers maintains that two other unnamed "Caucasian staff members perpetrated serious physical abuse of a patient. They also were transferred off the unit but were not suspended." (Id. at ¶ B.8.)[3] Additionally, she asserts that the "investigator in the plaintiff's case also investigated a comparable accusation against a white male staff member, but in his case [the investigator] helped him write a report that

---

[3] Although plaintiff does not identify the two white, female employees by name in her Local Rule 56(a)(2) statement, she identifies them at her deposition. (Doc. #29-4, Ex. A, Brown Dep. at 137.)

11

covered up his wrongdoing and thereby avoided any disciplinary action against him. (Id. at ¶ B.4.)

Plaintiff offers no admissible evidence to support these claims. A review of her deposition transcript reveals that plaintiff obtained her knowledge from hearsay sources. At her deposition, plaintiff conceded that she had no personal knowledge regarding any details as to these purported comparators. (Doc. #29-4, Ex. A, Brown Dep. at 49-50, 137-140, 154-156.) This does not suffice. It is "well established" that "'the district court in awarding summary judgment, may rely only on admissible evidence.'" Spiegel v. Schulmann, 604 F.3d at 81 (quoting Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004)).

Even if the evidence were not based on hearsay, it is skimpy. Plaintiff is vague about allegations of abuse by these employees. More to the point, there is no evidence offered to show that any abuse allegations were ever proven. (Doc. #29-4, Ex. A, Brown Dep. at 49-50, 137-140, 154-156.) Plaintiff provides insufficient information to enable the court to determine whether Kim Turnage and the other white employees are comparators.[4] See Graham v. Long Island R.R., 230 F.3d at 39-40

---

[4] See, e.g., Brown v. Waterbury Bd. of Educ., 247 F. Supp. 3d 196, 209-210 (D. Conn. 2017) (holding that "[t]o be 'similarly

(holding that "to satisfy . . . [the] 'all material respects' standard for being similarly situated, a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards . . . [and] that similarly situated employees who went undisciplined engaged in comparable conduct.")(citations omitted); Ucar v. Connecticut Dep't of Transp., No. 3:14CV0765 (JCH), 2017 WL 4022798, at *1 (D. Conn. Sept. 11, 2017) (same, citing Graham v. Long island R.R.).

Plaintiff further asserts that she "was the only black female who worked on the second shift in the unit and throughout her time there she 'was always shown . . . the cold shoulder.'" (Pl.'s SOF, ¶ B.3.) She contends that a "group of Caucasian staff members fabricated the false abuse charge against the plaintiff for the purpose of getting her removed from the unit." (Pl.'s SOF, ¶ B.5.)[5] She argues that her "evidence shows that

---

situated,' employees must be substantially similar as to specific work duties, education, seniority, and performance history ..." and that "[i]n the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated.") (internal quotation marks and citations omitted).

[5] To the extent that plaintiff suggests that the abuse charge was false, the arbitrator found that the allegations of patient abuse were credible and supported by the facts. (DMHAS' SOF ¶ 13; Pl's SOF, ¶ A.13.) In federal court, although the fact finder is not bound by an arbitrator's ultimate conclusion that discipline was appropriate and not the result of discrimination,

Caucasian employees in her position who commit the same infraction charged against her never get into the [discipline] pipeline in the first place." (Doc. #30 at 2.)

Again, without providing any particulars, plaintiff states in conclusory fashion that "a lot of things occur at the facility that are brushed under the rug." (Pl's SOF at ¶ 9.) She does not make any specific allegations as to what gets "brushed under the rug," and provides no admissible support for her statements. Plaintiff has not shown how such "things" give rise to an inference of discriminatory intent on the basis of her race. Plaintiff fails to provide any facts to support her allegations.

Courts in this Circuit have recognized:

> A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may she rest on the "mere allegations or denials" contained in her pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing

---

"[t]he factual findings supporting [an arbitrator's] ultimate conclusion — that [plaintiff] had indeed committed the charged conduct . . . are of a different nature. These findings precluded [plaintiff] from arguing otherwise at trial." Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 49 (2d Cir. 2014). See, e.g., Kadri v. Groton Bd. of Educ., No. 3:13CV1165 (JCH), 2014 WL 1612492, at *2 (D. Conn. Apr. 22, 2014) (holding that "[plaintiff] is precluded from disputing any of the factual findings in the [arbitrator's] decision," (citing Matusick v. Erie Cnty. Water Auth.).

14

> Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). Litigants in the District of Connecticut must comply with Local Rule 56 which requires a party opposing summary judgment to clearly list each disputed material issue of fact and cite to admissible evidence in the record to support each fact, or risk entry of summary judgment against them. See D. Conn. Loc. R. Civ. P. 56.

Connelly v. Ikon Office Sols., Inc., No. 3:03CV551(JCH), 2005 WL 589326, at *4 (D. Conn. Mar. 7, 2005). Further:

> Conclusory and speculative allegations will not suffice to demonstrate discriminatory intent. Rather, a plaintiff "must point to facts that suggest" that the adverse employment action was motivated, at least in part, by discriminatory animus. Kalsi v. N.Y.C. Transit Auth., 62 F.Supp.2d 745, 753 (E.D.N.Y. 1998), aff'd, 189 F.3d 461 (2d Cir. 1999); see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (reaffirming that, in order to prove a case of discrimination, a plaintiff "may not rely simply on conclusory statements"); Anderson v. Port Auth., No. 04-CV-4331, 2009 WL 102211, at *4 (S.D.N.Y. Jan. 12, 2009) ("[M]ere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a discrimination case must proffer 'concrete particulars' to substantiate his claim."). Though "the burden of meeting the prima facie case is 'de minimis,'" a "[p]laintiff must adduce some admissible evidence that would support his claims." Henny v. N.Y. State, 842 F.Supp.2d 530, 553 (S.D.N.Y. 2012) (alterations and internal quotation marks omitted).

Nguyen v. Dep't of Corr. & Cmty. Services, 169 F. Supp. 3d 375, 388 (S.D.N.Y. 2016).

Plaintiff's conclusory allegations of discrimination are insufficient to establish a prima facie case. They are

inadmissible hearsay, and plaintiff offers no admissible evidentiary support for her statements. Plaintiff's unsubstantiated statements, without more, are insufficient to show discriminatory intent.

At the <u>prima facie</u> stage, "[t]he only relevant inquiry is whether Plaintiff has come forward with enough evidence from which a rational fact finder could infer unlawful discriminatory animus on the part of [Defendants] . . . . When a plaintiff fails to present evidence to establish any such causal link between [the adverse employment action] and [her protected class,] summary judgment is appropriate." <u>Johnson v. N.Y. City Dep't of Educ.</u>, 39 F. Supp. 3d 314, 322 (E.D.N.Y. 2014) (citation and internal quotation marks omitted); <u>see, e.g.</u>, <u>Whaley v. City Univ. of N.Y.</u>, 555 F. Supp. 2d 381, 402 (S.D.N.Y. 2008) (granting summary judgment on Title VII discrimination claim where "no evidence support[ed] any finding of discriminatory animus.").

Although the burden of establishing a <u>prima facie</u> case is slight, plaintiff has not put forth evidence that satisfies this standard. She fails to provide concrete evidence of circumstances giving rise to an inference of discrimination. <u>See</u> <u>D'Amico v. City of N.Y.</u>, 132 F.3d 145, 149 (2d Cir. 1998) (holding that party opposing summary judgment "must offer some

hard evidence showing that its version of the events is not wholly fanciful."). On this record, plaintiff's disparate treatment claim fails at the prima facie stage.

### 2. Employer's Non-Discriminatory Reason

Even if plaintiff had established a prima facie case of disparate treatment, DMHAS has articulated a legitimate nondiscriminatory reason for suspending her. As plaintiff concedes, DMHAS "typically . . . suspend[s] any MHA-1 for a substantiated instance of patient abuse." (DMHAS' SOF ¶ 14; Pl's SOF ¶ A.14.)

At the second stage of the McDonnell Douglas analysis, an employer's burden is to "clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (internal quotation marks omitted). The employer's "burden of production is not a demanding one; it need only offer an explanation for the employment decision." Campbell v. Cty. of Onondaga, No. 504CV1007 (NAM)(GHL), 2009 WL 3163498, at *17 (N.D.N.Y. Sept. 29, 2009). Here, DMHAS sets forth evidence to show that it suspended plaintiff for five days due to a substantiated claim of patient abuse. DMHAS has met its burden.

17

3. Pretext

Even if the court were to reach the last prong of the McDonnell Douglas analysis, summary judgment still would be appropriate because plaintiff is unable to carry her ultimate burden of proving that the DMHAS' proffered rationale is "mere pretext for actual discrimination." Weinstock, 224 F.3d at 42.

To satisfy this burden, which is "higher than that . . . applied for analyzing the prima facie case," Geoghan v. Long Is. R.R., No. 06CV1435, 2009 WL 982451, at *21 (E.D.N.Y. Apr. 9, 2009):

> the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors. Regardless of whether the plaintiff can prove pretext, she . . . bears the ultimate burden of persuasion, and must adduce enough evidence of discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination.

Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004) (internal quotation marks and citations omitted). See, e.g., Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013) and Brown v. Waterbury Bd. of Educ., 247 F. Supp. 3d 196, 212 (D. Conn. 2017) (both holding that "[t]o defeat summary judgment ... the plaintiff is not required to show that the employer's proffered reasons were false or played

18

no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.") (internal quotation marks and citations omitted)).

"To meet [her] . . . ultimate burden, the plaintiff may, depending on how strong it is, rely upon the same evidence that comprised her prima facie case, without more." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d at 124 (internal quotation marks and citation omitted).

> A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination.

Graham v. Long Island R.R., 230 F.3d 34, 43 (2d Cir. 2000). Summary judgment is inappropriate "unless the defendants' proffered nondiscriminatory reason is dispositive and forecloses any issue of material fact." Brown v. Waterbury Bd. of Educ., 247 F. Supp. 3d at 212 (quoting Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d at 124). Nonetheless, "it is not enough . . . to disbelieve the employer; the fact finder must [also] believe the plaintiff's explanation of intentional discrimination." St. Mary's Honor Ctr., 509 U.S. at 519.

Here, to show pretext, plaintiff offers the same evidence and makes the same arguments as she did to support her prima

19

facie case. Although plaintiff is entitled to rely on the same evidence used to support her prima facie case, Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d at 124, that evidence does not show that DMHAS' legitimate nondiscriminatory reason for disciplining plaintiff was a pretext for discrimination. Plaintiff does little more than conclude that her unsupported statements establish pretext, which is insufficient to defeat summary judgment. See, e.g., Gengo v. City Univ. of N.Y., No. 07-CV-681 (KAM)(JMA), 2010 WL 6372012, at *14 (E.D.N.Y. Dec. 2, 2010) (holding that "plaintiff fails to demonstrate that the non-discriminatory reason proffered by defendant is pretextual . . . Plaintiff merely states in a conclusory fashion that pretext is established by the evidence he compiled in support of his prima facie case.").

Plaintiff being unable to carry her burden of proof, summary judgment in favor of defendant is appropriate.

IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment (doc. #29) is GRANTED.

SO ORDERED at Hartford, Connecticut this 30th day of March, 2018.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge